CARY v. THOMAS.

1. EVIDENCE—PRESUMPTIONS.
    Presumptions disappear when evidence is introduced from which
    facts can be found.

2. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — INSTRUCTIONS — EVI-
    DENCE — REQUEST TO CHARGE — EYEWITNESSES.
    Instruction that issue of contributory negligence of plaintiff's
    decedent, a serviceman for water softeners, whose body was
    found in the basement of defendant's house then being fumi-
    gated with cyanide gas, was to be determined from evidence
    bearing upon the care and caution which an ordinarily prudent
    and careful person would have used under the same circum-
    stances for his own protection, including the signs placed on
    the house, the fact that decedent entered the house through
    an unmarked, unlocked garage door with the family absent
    and the effect of the gas on the senses, *held*, justified, hence,
    it was not error to fail to give request that decedent was
    presumed free from contributory negligence because of the
    natural instinct of self-preservation in the absence of eye-
    witnesses.

3. SAME—LIABILITY OF OWNER OF PREMISES TO THIRD PERSONS FOR
    INDEPENDENT CONTRACTOR'S NEGLIGENCE.
    Generally, a contractee with an independent contractor is not
    liable for injuries occurring to third persons as a result of
    the contractor's negligence in doing work on the contractee's
    premises, where he uses due diligence in selecting a compe-
    tent contractor, the thing contracted to be done is not in

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur, Evidence § 166.
[2] 38 Am Jur, Negligence §§ 367, 368.
[3–5] 27 Am Jur, Independent Contractors § 27 *et seq.*
[3–5] Nonliability of an employer in respect of injuries caused
    by the torts of an independent contractor.  18 ALR 801.
[4, 5] 38 Am Jur, Negligence § 362 *et seq.*
[6] 20 Am Jur, Evidence § 450 *et seq.*

itself a nuisance nor will it necessarily result in a nuisance if proper precautionary measures are used.

4. SAME—FUMIGATION—WATER SOFTENER SERVICEMAN—REQUEST TO CHARGE—INSTRUCTIONS—EVIDENCE—INDEPENDENT CONTRACTOR.

It was not error for trial court to fail to give request to charge that owner of premises could not delegate the duty to see to it that independent contractor who had been engaged to fumigate premises with cyanide gas used reasonable precautions against injury to plaintiff's decedent, a water softener serviceman who was scheduled to make his service call while fumigation was being done, where instruction was given that jury was to determine whether or not defendant had exercised care in hiring a competent person to do the work and left the premises in his charge under circumstances that it would not necessarily have resulted in danger to others and it appears that there was evidence defendant did not know the exact day decedent was to service the softener, signs were duly posted which could be seen by decedent and the independent contractor assured defendant that all doors would be locked and posted until the job was completed.

5. SAME—FUMIGATION—INSTRUCTIONS—OWNER'S RESPONSIBILITY.

Instruction that defendant, owner of premises being fumigated with cyanide gas, was under duty to exercise reasonable care and caution to prevent accident or injury upon the premises during the process, adequately informed jury of his responsibility in action by administrator of estate of decedent, a water softener serviceman, who entered the house through an unlocked door on scheduled call.

6. EVIDENCE—HEARSAY—INSTRUCTIONS.

Instruction that testimony of independent contractor, engaged by defendant owner to fumigate house with cyanide gas, that defendant's wife, deceased at time of trial and not a party to action by administrator of estate of serviceman who died while servicing water softener, had told the witness the garage door through which decedent had entered was locked, was inadmissible unless the husband heard such statement and acquiesced in it *held*, proper, since otherwise the statement was hearsay and inadmissible.

SMITH and BLACK, JJ., dissenting.

Appeal from Kent; Searl (Fred N.), J. Submitted January 12, 1956. (Docket No. 18, Calendar No. 46,639.) Decided May 14, 1956.

Case by James R. Cary, administrator of the estate of Charles F. Burk, deceased, against Robert W. Thomas for damages for death of service deliveryman in basement of house being fumigated. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Rosenburg, Painter & Davidson* and *Dudley & Rogers,* for plaintiff.

*Kleinstiver & Anderson* and *Alexander, Cholette, Buchanan, Perkins & Conklin (Edward D. Wells,* of counsel), for defendant.

SHARPE, J. This is an action instituted by James R. Cary, administrator of the estate of Charles F. Burk, deceased, to recover damages for the wrongful death of Charles F. Burk. Defendant Thomas and wife were the owners of a home on McCain road near the city of Jackson, Michigan. Some time prior to October 18, 1951, they employed Charles Wilman, an independent contractor, to fumigate their home. The home has 3 entrances, a front door on the north, a kitchen door on the south, and a third entrance through the garage which is attached to the house. Entrance to the garage from the driveway was through an overhead aluminum garage door. There is a door leading from the garage to the basement of the house. In the process of fumigating defendant's home, Mr. Wilman and his helper saw that all windows of the house were latched from the inside, all doors locked, except the garage door. Signs were placed on the front and back of the house which contained the following, "danger" and "death gas." No sign was placed on the garage door. The gas used to fumigate was cyanide gas, which is poisonous if inhaled in sufficient quantities.

The deceased, Charles F. Burk, was employed by the Servisoft Company of Jackson, Michigan. Under a contract, the Thomas home was serviced every 28 days. Defendant Thomas was furnished a calendar, showing the service calls and the date the service was to be rendered. On October 18, 1951, the deceased arrived at the Thomas home about 2:30 p.m. At about 5:30 p.m. his body was found in the basement of the Thomas home. The basement and the entire house was impregnated with cyanide gas when the deceased's body was found. A half pound of cyanide had been previously placed in the basement. The deceased apparently entered the east drive and proceeded around the rear of the house, as his truck was headed north in front of the garage. The east driveway at the nearest point to the front of the house is a distance of approximately 60 feet from the front door. The sign at the rear kitchen door was approximately 12 feet higher than the ground level of the driveway. The deceased was survived by his widow and 2 children by a previous marriage.

On October 9, 1953, plaintiff filed a declaration in the circuit court of Kent county, in which it is alleged:

"That at said time and place it then and there became and was the duty of this defendant to use reasonable care to protect invitees or licensees on the premises from coming in contact with the dangerous and deadly gas being introduced into the residence; to take reasonable precautions to prevent licensees or invitees from entering into said premises when such deadly gas was present; to exercise reasonable care not to invite plaintiff's decedent into a place of danger; to exercise reasonable care and prudence to render the premises reasonably safe for plaintiff's decedent's service call; to warn plaintiff's decedent of the presence of a deadly

gas contained within the premises; to lock all entrances to said residence and to post warning signs of the deadly gas at all entrances to said residence; and to take all reasonable and prudent precautions to prevent injury to plaintiff's decedent by reason of such fumigating process; to advise and warn the Servisoft Company and its employee, plaintiff's decedent, that said fumigation process was being carried on in said residence.

"That nevertheless and contrary to the aforesaid duties the defendant did carelessly, negligently and recklessly fail to carry out and perform the various duties imposed upon him and did carelessly, negligently and recklessly fail to use reasonable care to protect invitees or licensees on the premises from coming in contact with the dangerous and deadly gas introduced into the residence; did fail to take reasonable precautions to prevent licensees or invitees from entering into said premises when such deadly gas was present; did fail to exercise reasonable care not to invite plaintiff's decedent into a place of danger; did fail to exercise reasonable care and prudence to render the premises reasonably safe for plaintiff's decedent's service call; did fail to warn plaintiff's decedent of the presence of a deadly gas contained within the premises; did fail to lock all entrances to said residence and to post warning signs of the deadly gas at all entrances to said residence; did fail to take all reasonable and prudent precautions to prevent injury to plaintiff's decedent by reason of such fumigating process; did fail to advise and warn the Servisoft Company and its employee, plaintiff's decedent, that said fumigation process was being carried on in said residence.

"Plaintiff further alleges that this defendant wholly failed to lock or secure the basement door entrance used by plaintiff's decedent and wholly failed to post any warning signs on said entrance used by plaintiff's decedent.

"Plaintiff further shows that the defendant knew that plaintiff's decedent used the basement entrance

in servicing the water softener and knew that plaintiff's decedent was due at said residence on said date to conduct such servicing operation. That as a result of the defendant's failure to use due care as alleged herein and by reason of his failure to perform the various duties imposed upon him as in this declaration set forth and as a proximate result thereof the said residence was left unlocked and unposted at the door used by plaintiff's decedent. That plaintiff's decedent, a licensee and invitee of the defendant, without knowledge or notice that said home was filled with a deadly fumigating gas, entered into the basement entrance of said home to service the water softener. That at that time and place plaintiff's decedent, while in the basement of said home and in the process of servicing said water softener came in contact with and inhaled the cyanide gas in said basement, and that as a result thereof said gas caused his death at said time and place. That plaintiff's decedent's body was found alongside said water softener in the late afternoon of October 18, 1951, with the water softening process partially done."

Defendant filed an answer to plaintiff's declaration, in which it is stated:

"Defendant denies each and every allegation therein contained, and shows that said Charles T. Wilman, doing business as Wilman Fumigating Company, came to said residence to do certain fumigating on the day previous to the day he had arranged with plaintiff's wife to come to said residence for such purpose; that on said October 18, 1951, full control and possession of said residence and premises was turned over to said Wilman for the purpose of fumigating, and the defendant was wholly and completely excluded therefrom until permitted by said Wilman to return to the said residence, and until full possession and control of the said residence and premises was to be turned back to defendant and his wife, after said fumigating process was com-

pleted and all traces of the fumigating gas had dispersed and disappeared therefrom; that until such time said residence was wholly and exclusively in the possession, control and management of said Wilman, to the exclusion of defendant; that before defendant left said premises signs warning against the dangers of said fumigating gas had been posted on said premises by the said Wilman, locks were provided on the doors, and that after leaving said premises the said Wilman had full and complete access to the same to perform the said work of fumigating and enter the same from any and all entrances and doors, and full authority, and that it was said Wilman's duty to exclude all persons therefrom, and that all of the entrances and doors to said residence were provided with proper locks and means of closing and securely fastening the same, all of which was well known to said Wilman, to whom keys of said residence were turned over when defendant's family left said residence and turned it over to Wilman before he went into the said building to fumigate the same; that said Wilman had full knowledge of all entrances to said residence and premises and the locks provided thereon, and had warning signs posted on all of said entrances."

The cause came on for trial, and at the conclusion of plaintiff's case defendant's counsel made a motion for a directed verdict on the ground that defendant Thomas is not responsible for the negligence of an independent contractor, that this accident was caused by subsequent acts of negligence on the part of Mr. Wilman, and that plaintiff has failed to establish that Charles F. Burk, deceased, was free from contributory negligence. The motion was denied, and later the cause was submitted to the jury. The jury returned a verdict in favor of defendant. Plaintiff appeals and urges that the trial court erred in failing to give the following instruction as requested by plaintiff:

"I further instruct you that in this action there was no eyewitness to the accident itself. Because of the natural instinct of self-preservation which generally prompts men to exercise care and caution for their safety, there is ordinarily a presumption that due care and caution were observed in particular instances. I instruct you, therefore, that the plaintiff is entitled to the presumption that plaintiff's decedent at the time of his accident was in the exercise of ordinary care, and this presumption is not overthrown by the mere fact of the injury. This presumption of freedom from contributory negligence continues until rebutted by evidence from which you can find to the contrary."

Instead of giving the above instruction, the trial court instructed the jury:

"It is the claim of the plaintiff, Mr. Cary, who is the administrator, as I have said, of Mr. Burk's estate, that Mr. Burk entered this house through the garage by entering the garage through the garage door and then going through this other door that leads from the garage into the basement; and that both of these doors were unlocked and that neither of them had any warning signs upon it; and that he, Mr. Burk, did so in the business of his employer to service the water softener, that he did not know and had no notice of the presence of the cyanide gas in the house, and that he was free from any negligence on his part which contributed in any manner to the happening of this accident.    *    *    *

"And contributory negligence on the part of the plaintiff is negligence which contributes in any part to the happening of the accident. We do not weigh the negligence in a negligence case. If both parties are negligent, the plaintiff and defendant, the plaintiff's negligence contributes to the happening of the accident, then—or, in this case, of course, Mr. Burk whose estate the plaintiff represents—then the plaintiff cannot recover. So this is, as I say, the first question for you to determine, whether plain-

tiff's decedent, Mr. Burk, was free from contributory negligence. In determining this question, you take into consideration all the evidence bearing upon the degree of care and caution which an ordinarily prudent and careful person would have used under the same circumstances for his own protection, including the location of the signs, whether Mr. Burk should have seen them, the fact that Mr. Burk entered the house, if it is a fact, through the, or, by opening the garage door and by going through the garage into the basement with the family absent; the evidence of the effect of the gas on the senses, that is, the eyes, nose and so forth and any other evidence in the case which bears upon the care which you determine that an ordinarily careful and prudent man should have used and would have used under like circumstances."

While it is the general rule that, in the absence of an eyewitness, a presumption of due care exists, yet as was said in *Heckler* v. *Laing,* 300 Mich 139, 146, 147:

" 'Presumptions disappear when the facts appear. The facts appear when the evidence is introduced from which the facts may be found. Presumptions cannot be weighed against evidence for they fade out in the light of evidence, no matter how contradictory the evidence.' *Patt* v. *Dilley,* 273 Mich 601, 606.

" 'We are of the opinion that it is clear that it is the rule in this State that the presumption that a plaintiff is free from contributory negligence can be said to apply only in cases where there is an absence of any direct evidence to the contrary. The question then is, Was there evidence before the trial judge which could be said to overcome the presumption relied upon?' *Baker* v. *Delano,* 191 Mich 204, 209.

"See, also, *Gillett* v. *Michigan United Traction Co.,* 205 Mich 410; *Rousseau* v. *Brotherhood of American Yeomen,* 186 Mich 101; *Union Trust Co.* v. *American Commercial Car Co.,* 219 Mich 557; *Maki* v. *William*

*Bonifas Lumber Co.*, 278 Mich 610; *Christiansen* v. *Hilber*, 282 Mich 403."

In our opinion there were facts and circumstances from which inferences could be drawn that justified the trial court in instructing the jury as he did. We find no error in failing to give the requested instruction.

Plaintiff also urges that the trial court was in error in failing to give the following requested instructions:

"I further instruct you that an employer, such as the home owner in this case is liable for injuries caused by the failure of an independent contractor to exercise due care with respect to the performance of work which is inherently or intrinsically dangerous, such as this. The theory upon which this liability is based is that a person who engages a contractor to do work of an inherently dangerous character, remains subject to an absolute, nondelegable duty to see that it is performed with that degree of care which is appropriate to the circumstances, or, in other words, that all reasonable precautions shall be taken during its performance, to the end that third persons, such as Charles F. Burk, the deceased, when acting with reasonable care, may be effectually protected from injury.

"Stated another way, I instruct you that it is the duty of every person who does, in person, or causes to be done by another, an act which from its nature is liable unless precautions are taken, to do injury to others, to see to it that those precautions are taken, and he cannot escape this duty by turning the whole performance over to a contractor.

"I further instruct you, members of the jury, in accordance with the foregoing rules of law and in accordance with the undisputed facts in this case, that the fumigation of the Thomas home by the use of cyanide gas created an inherently dangerous condition, and I further instruct you that the failure to

post a warning notice on the garage door or to lock the garage door constituted negligence as a matter of law, and that the defendant, Robert W. Thomas, is, as a matter of law, chargeable with that negligence even though it might have been the negligent act of the contractor Wilman.

"I therefore instruct you, members of the jury, that in your consideration of this case, the only questions to be decided by you are (1) whether the plaintiff's decedent, Charles F. Burk, was himself guilty of any negligence which contributes to or brought about his death, and (2) if you find that the deceased was not guilty of any contributory negligence the only other question for you to determine is the matter of damages that you may award in this case."

The trial court instructed the jury:

"First, however, I will discuss with you this other question bearing upon the matter of liability. You will recall that I instructed that the plaintiff must prove by a preponderance of the evidence, in addition to freedom from contributory negligence on the part of Mr. Burk, 1 of 2 other elements: either that the defendant Thomas was, by his own acts or omissions, guilty of negligence which was a proximate cause of the accident, or that Mr. Wilman was guilty of negligence which was a proximate cause of the accident and that Mr. Thomas is responsible for Wilman's negligence. So I'll now take up this latter matter, Wilman's negligence and Thomas' responsibility for it. Mr. Wilman was what in law is called an 'independent contractor.' An independent contractor is one who is carrying on an independent business and contracts to do a piece of work according to his own methods and without being subject to control by his employer as to the means by which the result is to be accomplished, but only as to the result of the work.

"In this case it is agreed, and you need not spend any time on that issue because it is agreed by all

parties, that Mr. Wilman was an independent contractor.

"Now, you are instructed that under the undisputed facts in this case, Mr. Wilman, the independent contractor, was guilty of negligence which was a proximate cause of the accident. His negligence consisting of his failure to make certain that the doors of the garage, door into the house from the garage and door in the basement to the house from the garage were locked, and his failure to post warning signs and notices on or about the garage entrance, or on or about the door leading into the basement. So I do instruct you that, as a matter of law, Mr. Wilman was negligent and that his negligence was a proximate cause of this accident. * * *

"So between August, 1950 and October, 1951, I do for you to determine upon this issue, that is, whether, based on all the facts and circumstances in this case as they appeared to the defendant Thomas when he left his home on this Thursday noon with Mr. Wilman, the fumigator man or exterminator man, there doing the work, whether, in view of all those facts and circumstances, it would appear to a reasonably prudent man that the work which was about to be done would necessarily subject other persons to unusual danger. In considering this question, you must view the facts as they would have then appeared to a reasonably prudent man and not as they may subsequently appear after the occurrence of the accident in question. So the question is, would a reasonably prudent person with knowledge on the one hand that a fumigating gas which was poisonous was to be used in the home and that it would be unsafe to enter said premises for 3 or 4 days, but if you so find, on the other hand, he had hired a competent person and if you so find he had been informed as to the method to be used, and that all the doors would be locked with safety locks and would be posted with warning signs, and in view of all the other facts and circumstances disclosed by the evidence in this case, would an ordi-

narily careful and prudent person have believed, or have reason to believe that the work which was about to be done obviously exposed others to unusual perils, or necessarily subjected third persons to unusual danger?

"You are instructed that if the defendant, Mr. Thomas, under the facts and circumstances then known to him, as they appeared before the accident and before he left the home, knew, or as a reasonably prudent person should have known, that what was about to be done was inherently dangerous or was likely to subject other persons to unusual danger, then, under the law, the defendant is legally responsible for the acts of Wilman, the independent contractor. But, on the other hand, you are also instructed that if, under the facts and circumstances as they then appeared to Mr. Thomas, a reasonably prudent person would believe, or have reason to believe, that the performance of the contract, which was about to be performed in the ordinary mode of doing the work, would not necessarily subject third persons to unusual danger, then you are instructed that under those circumstances, those facts, the defendant would not be responsible or liable for the acts of the independent contractor, Mr. Wilman. Now, that is the issue that you will have to decide if, of course, you get to this point in the case. Does the case come within the general rule that the owner is ordinarily not liable for the negligence of a competent independent contractor, or does it come within the exception that the owner is liable for the negligence of the independent contractor if the work is of such inherently dangerous character that, in the natural course of things, it necessarily involves danger to others?"

The substance of the instructions given by the trial court was that it was a question of fact whether defendant Thomas exercised ordinary care in hiring a competent contractor to fumigate his house on the date in question. There is evidence in this case that

defendant hired a competent contractor to fumigate his house; that he discussed with the contractor the method of fumigation and the protection against any one entering the home during the process of fumigating. Moreover, there is evidence from which a jury could find that defendant Thomas did not know the specific day of the month when plaintiff's decedent would service the softener; that the danger sign on the front and back of the house was large enough to be readily seen by plaintiff's decedent; that defendant was informed by the contractor that all doors would be locked and posted until the job was completed. Defendant testified:

"So between August, 1950 and October, 1951, I do not remember of any occurrence that I was home to see Mr. Burk or any other serviceman come to our home. I had never seen anybody come to our home and just walk through the garage door and through the door and walk down in the basement without being announced or ringing the doorbell. I did not know that anybody was coming to our home and walking into our home without announcing themselves or ringing the doorbell or making their whereabouts known."

We approve of the following taken from 39 CJ, Master and Servant, § 1530, p 1324:

"Although the rule is stated in the decisions in many different ways, and although there is a considerable conflict of authority as to whether a particular state of facts brings the case within the general rule relieving the contractee from liability, or causes it to fall within one of the exceptions which render him liable, the general rule deducible from the decisions and the one now universally recognized is that, where the relation of an independent contract exists, and due diligence has been exercised in selecting a competent contractor, and the thing contracted to be done is not in itself a nuisance, nor

will necessarily result in a nuisance if proper precautionary measures are used, and an injury to a third person results, not from the fact that the work is done, but from the wrongful or negligent manner of doing it by a contractor or his servants, the contractee is not liable therefor."

See, also, *Rogers* v. *Parker,* 159 Mich 278 (34 LRA NS 955, 18 Ann Cas 753) ; and *Inglis* v. *Millersburg Driving Ass'n,* 169 Mich 311 (Ann Cas 1913D, 1174).

The trial court was not in error in failing to give the requested instructions.

Plaintiff also urges that the trial court was in error in failing to give the following instruction to the jury:

"I instruct you, members of the jury, that the owner of premises who directly or impliedly invites others to enter for some purpose of interest or advantage to such owner, owes to such persons a duty to use ordinary care to have his premises in reasonably safe condition for use in a manner consistent with the purpose of invitation, or at least not to lead them into a dangerous trap or to expose them to unreasonable risks, but to give them adequate and timely notice and warning of latent or concealed dangers which are known to the owner but not to the other. I further charge you that if there are hidden dangers upon the premises the owner must use ordinary care to give warning thereof to such invitee."

The trial court gave the following instruction to the jury:

"You are instructed that the defendant owed the duty of exercising reasonable care and caution, under the circumstances, and having the dwelling fumigated and in preventing the accident or injury upon the premises during such process. By reasonable care is meant that degree of care and caution

which an ordinarily prudent person would use under
the same or like circumstances. It does not mean
the highest degree of care, or special care, but only
the reasonable care that is usually exercised by the
ordinary person in like or similar circumstances.
So the question that you have to determine here on
this particular matter as to whether Mr. Thomas,
by his own acts or omissions, was guilty of negli-
gence, is whether, under the circumstances and the
evidence, the facts as you find them, and as they
existed on October 18, 1951, Mr. Thomas used that
degree of care which an ordinarily prudent person
would have used under like circumstances."

We think the instruction given by the trial court
adequately informed the jury of the responsibility
of defendant in connection with the fumigation of
the house.

Plaintiff also complains of the following instruc-
tion given by the trial court:

"But you are instructed that what Mrs. Thomas
may have said to Mr. Wilman or to anybody else
relative to the doors being locked would not be bind-
ing upon Mr. Thomas unless it was said in his pres-
ence and he, in substance, acquiesced in it, and to
that, of course, either by silence or act of words.
But unless he heard her say what you will find she
may have said, he would not be responsible for her
statements. A husband in Michigan is not liable
for the negligence of his wife, if any, in ordinary
cases. I won't attempt to go into all the details of
that subject. We have got plenty in this case with-
out getting afield any. But, in this case, under the
facts here, he would not be liable for any statements
made by her unless they were made in his presence."

It appears that defendant's wife was deceased at
the time of the trial and was never made a defendant
in the cause. During the trial Mr. Arthur Edinger,
a helper of the independent contractor, stated that
Mrs. Thomas told him the garage door was locked,

but no claim is made that this alleged statement was made in the presence of defendant. Plaintiff urges that this evidence is admissible for the reason that at the time of the fatal injury to plaintiff's decedent, Mr. and Mrs. Thomas owned the home as tenants by the entireties, and Mrs. Thomas acted as defendant's agent in making arrangements for the fumigation. The trial court ruled that such evidence was not admissible and instructed the jury as above quoted.

In our opinion such statements not made in the presence of defendant were hearsay statements and not admissible. Other questions have been raised, but in our opinion they are not vital to the issues involved and need no discussion.

The judgment is affirmed, with costs to defendant.

DETHMERS, C. J., and BOYLES, KELLY, and CARR, JJ., concurred with SHARPE, J.

BLACK, J. (*dissenting*). This Court has uniformly held that parties are entitled to have their cases submitted to jury upon such of the theories advanced by them as are justified by the evidence and the law applicable thereto, and that they are entitled to instructions appropriate to such theories (See collection of cases, opinion of Mr. Justice FELLOWS, in *People* v. *Rich*, 237 Mich 481, 495).

A request to charge appropriate to plaintiff's theory in this action for wrongful death, dealing with the subject of presumed due care, was duly submitted. The request was not given, either in language or in substance. The omission of the trial judge to charge the jury with respect to such presumption was, in my view, reversible error.

The opinion of Mr. Justice SHARPE shows all too clearly that plaintiff's decedent, guilty only of faithful and timely attention to duty imposed on him by

a contract of service, unwittingly entered a lethal trap set not by design but through the inexcusable negligence of those charged with legal duty to guard him against the ensuing tragedy. Two entrances to the trap were guarded by signs and bolted doors. The third entrance—the "logical" way of entry to service the water softener according to defendant's own testimony—was neither bolted nor guarded by warning of any kind. It was the one by which the decedent entered eternity. No one, so far as this record discloses, bothered to call the decedent or his employer with that warning one might naturally expect of a reasonably prudent person.

Against this background of fact, and on strength of 2 warning signs, one tacked to the front or street door and one to the rear door (plus alleged sensory warning *after* Mr. Burk entered the house), it is said that the court should not have granted plaintiff's request to charge No 11, which request is quoted in Mr. Justice SHARPE's opinion.

Since plaintiff did not request peremptory instruction that his decedent was free from contributory negligence, we need not decide as in *Peklenk* v. *Isle Royale Copper Co.*, 187 Mich 644, 648, whether such instruction would be appropriate to this case. It would seem, if a peremptory instruction was proper in *Peklenk,* such assuredly would be right for this case. Be that as it may, we are called upon to say whether plaintiff's said request No 11 should have been granted. I think it should, under the rule that the circumsantial evidence of the decedent's negligence, if any such be present here, is so slight and inconclusive as to require submission of the question to the jury either in the language as requested by plaintiff or in that shown in *Gillett* v. *Michigan United Traction Company,* 205 Mich 410.

As was said in the cited case (p 421):

"And while the jury, in weighing the evidence, may not consider the presumption, yet if, uninfluenced by the presumption, they reach the conclusion that the evidence tending to show decedent's negligence is not entitled to credit and should be disregarded, the presumption may then be considered as remaining in force so far as may be necessary to establish the fact that the deceased exercised proper care in all respects not expressly established by the evidence. It (the presumption) was not entirely displaced, but remained in abeyance pending the jury's reaching this preliminary decision as to the credence to be given the evidence on the particular point in which negligence was claimed."

Plaintiff was entitled to the charge as requested, either in the language thereof or in equivalent substance. Since the trial court's charge nowhere included or referred to the presumption of due care, and failed to submit the presumption for jury application should the jury find no lack of care on the part of decedent from the circumstances, I would reverse for new trial.

SMITH, J., concurred with BLACK, J.

The late Justice REID took no part in the decision of this case.