561 So.2d 1198 (1990)
Warren WALKER, Etc., et al, Appellants,
v.
PALM BEACH NEWSPAPERS, INC., Appellee.
No. 87-2278.
District Court of Appeal of Florida, Fifth District.
March 15, 1990.
On Motion to Certify Question June 14, 1990.
*1199 Michael P. Maguire of Maguire & Friend, Coral Gables, Edward Campbell, Palm Beach Gardens, and Marjorie Gadarian Graham, West Palm Beach, for appellants.
John P. Wiederhold and Lawrence I. Bass, of Wiederhold, Moses & Bulfin, P.A., West Palm Beach, and Dow, Lohnes & Albertson, Washington, D.C., for appellee.
GOSHORN, Judge.
The dispositive issue in this appeal concerns the correctness of the trial court's order directing a verdict for Palm Beach Newspapers, Inc., after finding that the newspaper's home delivery carrier, Samuel Turner, was an independent contractor and not its employee. This case is factually analogous to Miami Herald Publishing Company v. Kendall, 88 So.2d 276 (Fla. 1956) and we affirm on its authority.
The remaining two issues raised by appellant are without merit.
AFFIRMED.
COBB, J., concurs.
W. SHARP, J., concurs specially with opinion.
W. SHARP, Judge, concurring specially.
Factually, this case is somewhat different from Miami Herald Publishing Co. v. Kendall, 88 So.2d 276 (Fla. 1956), but it is not possible to conclude that the newspaper delivery person, Turner, was under closer control and supervision by the newspaper than was Molesworth in the Miami Herald case.
The Florida Supreme Court waxed somewhat nostalgic (in my opinion) when it wrote:
We have the definite opinion that newspaper boys as they perform their work generally in this country have a place in the pattern of American life that constitutes a "distinct occupation," Sec. 220(2)(b) [Restatement of the Law of Agency], and that the provisions of the contract in this case are harmonious with this idea.
88 So.2d at 279. I submit the court's conclusion that newspaper delivery boys are presumptively independent contractors was colored by a turn of the twentieth-century stereotype of a young capitalist making a fortune, after starting out selling newspapers a la Horatio Alger. Such a scenario was dated when written, and it has not aged well since.[1]
Control of the delivery person by the business entity is the key factor in distinguishing an employee from an independent contractor.[2] In both this case and Miami Herald, the control was so considerable that if such a standard were applied to all other business entities today, there would be very few true employees, and a vast number of independent contractors, in Florida's current work force.
For example, in this case, Turner was employed exclusively and full-time by the newspaper while delivering papers (one and one-half to two hours per day). He lacked any special skill or knowledge. He was employed indefinitely but could be terminated at any time. The newspaper directed Turner as to how,[3] when,[4] and where,[5] to deliver papers. The newspaper set the retail price. It paid Turner mileage and furnished him with free promotional materials. Customers complained directly to the newspaper. Turner was paid weekly.
*1200 I suggest it is now time to re-examine Miami Herald. Were we not bound by stare decisis, we should do so.

ON MOTION TO CERTIFY QUESTION OF GREAT PUBLIC IMPORTANCE OR ALTERNATIVELY TO CERTIFY DIRECT CONFLICT
PER CURIAM.
Pursuant to Florida Rule of Appellate Procedure 9.330(a), we grant the appellants' motion for certification and amend our previous opinion to include certification, pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v), of the following question to the Supreme Court of Florida as one of great public importance.
WHETHER, IN LIGHT OF THE EVOLVING BUSINESS RELATIONSHIP BETWEEN NEWSPAPER PUBLISHERS AND THE PERSONS DELIVERING THE NEWSPAPER, THE HOLDING IN MIAMI HERALD PUBLISHING CO. V. KENDALL, 88 So.2d 276 (FLA. 1956) IS STILL VIABLE.
We decline to certify direct conflict.
COBB, W. SHARP and GOSHORN, JJ., concur.
NOTES
[1] Girls and women, families, and retired persons  these now also deliver papers in order to support themselves and their families. A much more diverse group of people delivers papers today and for much more mundane reasons.
[2] Restatement 2d, Agency § 2; Miami Herald Publishing Co. v. Kendall, 88 So.2d 276 (Fla. 1956); Robison By and Through Bugera v. Faine, 525 So.2d 903 (Fla. 3d DCA 1987).
[3] He delivered papers in special wrappers only to the list of customers on his specified route, and had to follow all of the newspaper's special instructions.
[4] Before 6:00 a.m.
[5] Turner received a special computer printout from the newspaper of persons to whom to deliver.